**COUNTY OF SUFFOLK et al., Plaintiffs,**

v.

**SECRETARY OF the INTERIOR et al., Defendants,**

**National Ocean Industries Association et al., Intervenor-Defendants.**

**The NATURAL RESOURCES DEFENSE COUNCIL, INC., Plaintiff,**

v.

**SECRETARY OF the INTERIOR, Defendant.**

Nos. 75–C–208 and 76–C–1229.

United States District Court, E. D. New York.

Oct. 26, 1977.

David G. Trager, U. S. Atty. by Cyril Hyman and J. Christopher Jensen, Asst. U. S. Attys., Brooklyn, N. Y., Peter R. Taft and John J. Zimmerman, Dept. of Justice, Lawrence Hoese and Jack Hughes, Dept. of Interior, Washington, D. C., Irving Like, Sp. Counsel, County of Suffolk, Babylon, N. Y., Jon M. Kaufman, Sarah Chasis and Robert Stover, Kommel, Rogers, Kaufman, Lorber & Shenkman, New York City, for Natural Resources Defense Council, Inc.

‘ John Picciano, Mineola, N. Y., of counsel to County Attorney, County of Nassau, Nassau County Environmental Management Council, Hyman Herman, Sp. Counsel, County of Suffolk, Deer Park, N. Y., Francis G. Caldeira, Town Atty., Town of Islip, Islip, N. Y., W. Kenneth Chave, Jr., Town

Atty., Town of Hempstead, Hempstead, N. Y., Francis F. Doran, Town Atty., Town of North Hempstead, Manhasset, N. Y., Joseph Colby, Town Atty., Town of Oyster Bay, Oyster Bay, N. Y., Anthony R. Corso, Board of Trustees, Town of Huntington, Huntington, N. Y., Warren H. Gunther and F. Peter O'Hara, Cullen & Dykman, Brooklyn, N. Y., for intervenor-defendant New York Gas Group.

George A. Burrell, New York City, E. Edward Bruce, Robert J. Pope, Covington & Burling, Washington, D. C., William M. Meyers and Gene W. Lafitte, J. Berry St. John, Jr., Liskow & Lewis, New Orleans, La., for intervenors National Ocean Industries Association.

William F. Dudine, New York City, for Concerned Citizens of Montauk, Inc.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiffs seek an order disallowing trial court costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. Costs in this case are substantial. If the motion is not granted they would be paid by the citizens of the counties of Nassau and Suffolk and by the members of the Concerned Citizens of Montauk, Inc. and the Natural Resources Defense Council, Inc. These later public service organizations devoted their limited resources to litigating questions of significant public importance involving protection of the environment. Because plaintiffs brought this litigation in good faith and it resulted in substantial benefits to the public and for other reasons indicated below, trial costs are disallowed. It is not winners alone who contribute to society; this is an instance where the losing litigants are entitled to some consideration for their aid to the common weal.

### I. *FACTS*

Potential costs in this case are substantial. Intervenor-defendants National Ocean Industries Association, et al. (NOIA) sought a total reimbursement of $7,434.64 for transcript costs, witness travel and subsistence, and duplicating charges. The largest part of NOIA's costs consisted of $6,559.30 for the transcript of the preliminary injunction hearing and for the trial. Witness travel expenses and subsistence allowances amounted to approximately $700. Following disallowance, without explanation, of intervenors' costs on appeal by the Court of Appeals, these defendants withdrew their application for costs in the trial court.

Federal defendants seek costs totaling $3,536.23 for hearing and trial transcripts and expenses of a deposition. The federal defendants-appellants had costs of $5,660.49 taxed in their favor by the Court of Appeals for costs on the appeal; no explanation was given for allowing these costs while disallowing those of the intervenors.

In the course of the litigation, plaintiffs produced many eminent scientists whose learned testimony, together with extensive supporting studies and other documents, filled a record of tens and thousands of pages. Much of this data was developed under great pressure of an impending lease of major national significance. Required trial court opinions summarizing the facts and law were hundreds of pages in length.

The scientists and other expert witnesses donated time normally devoted to their vacations or to scholarly work. Plaintiffs' attorneys worked long hours with great skill to present the factual and legal issues to the court. (This high professional standard was matched by that of defense counsel and their witnesses; the court once again expresses its gratitude for the extraordinary proficiency and high ethical standards of all the members of the legal profession, scientists, technicians and government and private employees who participated in the trial stages of this case.)

The issues involved not only national policy and welfare but the public health and well-being of millions of people living in the northeast littoral. Even though the plaintiffs' complaint was ultimately dismissed, their contribution to a future rational policy that protects both the need for energy and for a safe environment was substantial.

Without contradiction, plaintiffs assert that prior to the trial the Secretary of the Interior had failed to conclude that if oil and gas are found on the Mid-Atlantic Outer Continental Shelf, an independent environmental impact statement would be filed considering methods of transporting these fuels. Only after the trial was a decision made that such an environmental impact statement would be filed. The Court of Appeals relied heavily upon this decision to control transportation plans in confirming the sale. 562 F.2d 1368, at 1381–1382, 1390–1391. It first noted that if the federal action was not

> one subject to substantial modification by the government to satisfy environmental objections as it progresses we, like the district court, might be troubled by the apparent failure of the EIS, despite its length, to deal as thoroughly with some environmental consequences of transportation as might be hoped.

*Id.* at 1390. It concluded:

> We are satisfied that the Department of Interior, which will have continuous control over the venture, will deal with them thoroughly in the Development Plan EIS before approving any plans for transportation of such oil as may be discovered in the Sale 40 area and after the Department has the essential information regarding the location, quantity and quality of any discovered oil, an ocean bottom survey, and the Coastal Zone Management Act programs that will have been enacted.

*Id.* at 1391.

In footnote 15, the Court of Appeals detailed another contribution made by the plaintiffs, listing "examples" of the questions left unanswered by the EIS. *Id.* at 1390. These questions were raised by plaintiffs. Having had them brought forcefully to their attention, defendants will undoubtedly considered them before proceeding with full exploitation of the leased fields.

Plaintiffs' other contributions to environmental law in the course of the litigation were substantial. Among them was confirmation of the principle that the trial court may hear extensive testimony in reviewing an environmental decision. *Id.* at 1384–1385. The Court of Appeals also recognized the right of the public to see critical summary documents prepared internally to assist the decision-maker; they supplement the formal environmental documents. *Id.* at 1383–1384.

By bringing to the notice of the public, interested officials and the concerned parties some of the shortcomings of the environmental statement and other problems involved in the development of this area, the litigation encouraged a more intelligent analysis and public debate on the benefits and dangers of the project. Environmental impact statements written for future offshore developments will undoubtedly benefit from the critical attention that was focused on the environmental statements in this case. Apparently that useful result has already been accomplished in connection with the subsequent environmental statement published for the North Atlantic area.

## II. *LAW*

Rule 54(d) of the Federal Rules of Civil Procedure grants full discretion in the trial court to disallow costs. It provides, in relevant part:

> *Costs* Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs
> . . . . .

The almost unreviewable discretion of the district judge to award or to disallow costs to the prevailing party has been uniformly recognized. *See, e. g., Farmer v. Arabian-American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); *McDonnell v. American Leduc Petroleums, Ltd.*, 456 F.2d 1170, 1188 (2d Cir. 1972); *Oscar Gruss & Son v. Lumbermens Mutual Casualty Co.*, 422 F.2d 1278, 1284–85 (2d Cir. 1970); *Maldonado v. Parasole*, 66 F.R.D. 388, 390 (E.D.N.Y.1975).

In determining whether costs should be allowed the court must consider the equities and public interests at stake.

[W]here it is clear that the action was brought in good faith, involving issues as to which the law is in doubt, the court may in its discretion require each party to bear its own costs although the decision was adverse to the plaintiff.

*Chicago Sugar Co. v. American Sugar Co.,* 176 F.2d 1, 11 (7th Cir. 1949), *cert. denied,* 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584 (1950). As Judge Bazelon explained in another "public interest" suit, *Rural Housing All. v. United States Dept. of Agri.,* 167 U.S.App.D.C. 345, 347, 511 F.2d 1347, 1349 (1974):

> [T]his approach is premised on the proposition that the taxation of costs works as a penalty, which should not be imposed unless the loser can fairly be expected to have known at the outset that his position lacked substance.

*Id.* The function of plaintiffs as a private attorney general devoting energies to enforcement of a national policy affecting many people must be considered. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

Other factors that are to inform the court's discretion include "the relative merit of the . . . contribution, the novelty of the issues . . . and the public interest." *Delta Airlines, Inc. v. CAB,* 164 U.S.App.D.C. 279, 281, 505 F.2d 386, 388 (1974). It is appropriate, too, to consider the lack of assets of a small private association in deciding whether to burden it further. *See United States v. State of Washington,* 66 F.R.D. 477 (D.C.Wash. 1974). There is no need to consider, as the District Court of Washington did in *United States v. State of Washington,* whether there is power to award fees against the plaintiff Counties of New York State.

■ In sum, in a case brought by representatives of the public challenging major governmental action threatening the environment, the court should deny costs to successful defendants where cost-related equities favor the plaintiffs. Among the questions the court should weigh are the following: (1) was the action brought and carried forward in good faith; (2) did its prosecution provide direct or indirect benefits to the public; (3) did it result in direct or indirect benefit to defendants; (4) were novel and substantial issues of law or fact resolved; (5) are costs required to reimburse needy defendants; (6) will the costs unduly burden non-affluent plaintiffs; (7) and will imposition of costs unduly inhibit future challenges to environmental decisions, thus reducing the effect of substantive environmental protections?

■ Appellate courts have independent discretion · to rule upon costs on appeal. Federal Rules of Appellate Procedure, Rule 39(a). But this power has no effect in limiting the trial court's discretion, based as it is on ancient equity practice. *Cf.* 10 Wright & Miller, Federal Practice and Procedure, § 2668 at p. 141 (1973). Allowance of costs to defendants on appeal does not bind a district court. In this case costs on appeal were granted against some of plaintiffs to defendants-appellants. The court must, respectfully, decline to be bound by the Court of Appeals' unexplained decision in this matter; under the rules, this court must exercise its independent discretion.

### III. *LAW APPLIED TO FACTS*

■ In this litigation the criteria for assessing costs all lead to their denial. The action was brought and prosecuted in good faith; novel issues of fact and law were raised; and important benefits were conferred upon the public and the prevailing litigants.

The defendants, Secretary of the Interior and the United States, have benefitted directly for the reasons already noted. The litigation has also assisted the private defendants; their future rights and obligations have been more clearly spelled out. The National Ocean Industries Association, the New York Gas Group and other private intervenor-defendants, voluntarily joined the litigation in order to protect their own interests and indirectly those of the public; they achieved this result.

In view of the enormous resources of the defendants, the amount of the costs are for

them de minimus. For some of the plaintiffs, however, the costs would present a substantial burden. Since the federal government has increasingly recognized the need to assist localities financially, it makes little sense to, in effect, take money from Nassau and Suffolk taxpayers to pay the litigating expenses of the federal government.

We also must be cognizant of the deterrent effect on future environmental suits that allowing costs to the defendants would entail. At least at this early stage of environmental law development, bona fide litigations to protect the environment should not be discouraged.

### IV. CONCLUSION

In the exercise of discretion, costs to defendants are denied.

So ordered.