BLACK HILLS ALLIANCE, P. O. BOX 2508, RAPID CITY, SOUTH DAKOTA 57709; (605) 342–5127; Roy K. Sayle, P. O. Box 475, Edgemont, South Dakota 57735, (605) 662–7713; Richard G. Whitten, 335 N. Plum St., Vermillion, South Dakota 57069, (605) 624–5305; Dr. Dilwyn J. Rogers, 2020 S. Lake, Sioux Falls, South Dakota 57105, (605) 336–4716, Plaintiffs

v.

REGIONAL FORESTER, Rocky Mountain Region, United States Forest Service; Forest Supervisor, Black Hills National Forest, United States Forest Service; District Ranger, Elk Mountain District, United States Forest Service, Defendants, and Union Carbide Corporation, Intervenor.

Civ. No. 80–5063.

United States District Court,
D. South Dakota, W. D.

Nov. 19, 1981.

Phyllis Girouard and Andrew B. Reid, Piedmont, S. D., for plaintiffs.

Ted McBride, Asst. U. S. Atty., Rapid City, S. D., for defendant.

Thomas J. Welk, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S. D., and Robert G. Pruitt, Pruitt & Gushee, Salt Lake City, Utah, for intervenor.

MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Plaintiffs in this case, which was dismissed on the ground of mootness, have raised the question of whether they were entitled to costs. The Court, having found that plaintiffs are so entitled, taxes costs in favor of plaintiffs against defendant-inter-

venor, Union Carbide Corporation, but not against the government.

This case stems from the search for uranium conducted by Union.Carbide Corporation, defendant-intervenor in this action, in the Southern Black Hills of South Dakota. On April 12, 1979, Union Carbide submitted to the United States Forest Service an operating plan for construction of an exploration adit in Craven Canyon in Fall River County, South Dakota. After some revisions, the plan was approved by the Forest Service on July 13, 1979. Plaintiffs, a local environmental organization, opposed the plan, but their appeals within the administrative framework of the Forest Service were successively denied. Plaintiffs then filed a complaint in this Court on July 21, 1980, raising numerous issues dealing with the Forest Service approval of the operating plan.

Although rather vigorously contested, the case failed to reach a final decision on the merits. Union Carbide withdrew its operating plan on August 14, 1981, and this Court dismissed the action as moot on October 15, 1981, expressly reserving the issue of the taxation of costs.

Defendants have resisted the taxation of costs, arguing that plaintiffs are not a "prevailing party" within the meaning of Rule 54(d), and thus not entitled to costs as a matter of right. Defendants cite *In re Grand Jury Proceedings*, 574 F.2d 445 (8th Cir. 1978), but the language of that opinion suggests only that under the circumstances of that case, the court found that no costs should be awarded. The case in no way purports to lay down a general rule that costs are to be denied when an action has become moot.

■ Keeping in mind that it "is settled law that costs in equity proceedings are matters within the discretion of the court . . . [which] may award costs either to the successful or to the defeated party", *Kederick v. Heintzleman*, 16 Alaska 333, 141 F.Supp. 633 (1956) this Court looks for guidance to *County of Suffolk v. Secretary of Interior*, 76 F.R.D. 469 (E.D.N.Y.1977). *County of Suffolk* was brought, in part, by

public service organizations with limited resources, and involved environmental questions. Plaintiffs' complaint was ultimately dismissed, but the court refused to tax costs in favor of defendants notwithstanding the fact that defendants had prevailed. In reaching this decision, the *County of Suffolk* court stated that "the court must consider the equities and public interests at stake." 76 F.R.D. at 472. The case enumerated seven factors that the court indicated should be weighed. Revised somewhat to meet the facts of this case, the factors are:

(1) was the action brought and carried forward in good faith;

(2) did its prosecution provide direct or indirect benefit to the public;

(3) did it result in direct or indirect benefit to defendants;

(4) were novel and substantial issues of law or fact resolved;

(5) are costs required to reimburse needy plaintiffs;

(6) will these costs unduly burden defendants;

(7) will denial of costs unduly inhibit future challenges to environmental decisions, thus reducing the effect of substantive environmental protections?

*See* 76 F.R.D. at 473. Applying these factors to the circumstances of the *County of Suffolk* case, the court found that the bringing of that action had benefited the governmental defendants by giving them a clearer insight into the proper preparation of environmental impact statements; the private defendants benefited from having "their future rights and obligations . . . more clearly spelled out." 76 F.R.D. at 473. The court found that the litigation had "encouraged a more intelligent analysis and public debates" of the issues involved, 76 F.R.D. at 472, and that the plaintiffs' "contribution to a future rational policy that protects both the need for energy and for a safe environment was substantial." 76 F.R.D. at 471. Finally, the court stated that "[i]n view of the enormous resources of the defendants, the amount of the costs are

for them de minimus. For some of the plaintiffs, however, the costs would present a substantial burden." 76 F.R.D. at 473–74.

█ The *Suffolk* standards may appropriately be applied here, in aid of a search for the pertinent facts which should be weighed by the court in seeking to reach a reasoned legal conclusion. The following circumstances are relevant:

(1) This action has clearly been brought and carried forward in good faith by plaintiffs;

(2) The prosecution of this action has provided a measure of benefit to the public. One of the central issues in the action was plaintiffs' assertion that defendants had failed to properly consider "the eligibility of archeological sites within Craven Canyon and the affected area for nomination to "the National Register of Historic Places." During the pendency of this litigation, during which Union Carbide voluntarily ceased to physically carry out its operating plan for exploration, these archeological sites were in fact nominated for inclusion in the Register by the Director of the South Dakota Office of Cultural Preservation.[1] While this litigation may not have actually caused this nomination, the Court does not doubt that the existence of the lawsuit drew increased attention to the archeological sites and the effect mining would have on the sites.[2] Further, this litigation has also provided a forum for reasoned legal argument over certain aspects relating to the issue of uranium mining, an issue relatively new to South Dakota but of unquestioned importance;

(3) While this lawsuit may not have been of any direct benefit to defendants, it still seems clear that defendants have received some indirect benefits. Although defendants may make no concessions now that the approval of the operating plan was in any way incorrect, plaintiffs' vigorously asserted position has surely apprised defendants of some subjects, such as preservation of archeological sites, that should be more carefully considered in the future preparation and approval of operating plans, perhaps preventing a repetition of a lawsuit such as this;

(4) It was not possible to resolve any novel and substantial issues of law or fact in this case, because of the withdrawal of the Union Carbide operating plan, but a number of such issues were raised, including questions of the application of the American Indian Religious Freedom Act, 42 U.S.C. § 1996. This Court is of the view that the fact these questions were raised, and thoroughly briefed by the parties, giving the Court and counsel an opportunity to acquire some familiarity with the issues, may in no small measure expedite the resolution of the issues when they are eventually raised in another action;

(5) The Court accepts without question plaintiffs' representations of its extremely limited resources, many of which were devoted to an able and thorough prosecution of this action;

(6) Defendants' resources are substantial and will not be unduly burdened if costs are taxed;

(7) The Court must also find that the denial of costs here would unduly inhibit

1. While unnecessary to the decision here reached, this Court is also inclined to the view, from the state of the record at this time, that plaintiffs would have prevailed on this point had the action gone forward, a circumstance that has been used to award costs where a case has become moot. *Newport News F. F. A. Loc. 794 v. City of Newport News, Va.*, 339 F.Supp. 13 (E.D.Va.1972). It seems probable that the approval of the operating plan was an act that was subject to 36 C.F.R. § 800.4, which required a government agency such as the Forest Service to determine, before the undertaking could proceed, whether archeological sites in

the area of the operating plan were eligible for inclusion in the Register. The Forest Service appears to admit that such had not been done.

2. The form nominating the sites notes that "[w]ith the southern Black Hills area slated for rapid development, many archaeologists and local residents expressed their concern that the sites would be placed under considerable stress by mineral exploration and mining. . . . It was feared that the aboriginal carvings and paintings would be destroyed by . . . construction before they could be adequately recoreded [sic] or protected."

future challenges to environmental decisions. While the Court does not question the motives of the decision by Union Carbide in this case to withdraw its plan, the failure to award costs here would have a serious impact on small environmental groups like plaintiffs. An environmental group may strain itself to the utmost in the preparation of a case, only to see the work all rendered useless by a unilateral decision by a large corporate defendant to withdraw its plans rather than risk an adverse decision. The defendant could then move to another area to commence operations again, leaving plaintiffs financially unable to re-open colorably valid litigation.

■ Having made these findings, the Court holds that plaintiffs are entitled to tax costs against Union Carbide in this action. Since the withdrawal of the plan was an event over which the Forest Service had no control, however, costs shall not be taxed against federal defendants.