STATE of Rhode Island

v.

**LEAD INDUSTRIES ASSOCIATION, INC., et al.**

No. 2004–63–M.P.

Supreme Court of Rhode Island.

June 2, 2006.

Neil F.X. Kelly, Fidelma L. Fitzpatrick, Providence, for Plaintiff.

John Tarantino, Joseph V. Cavanagh, Jr., Providence, for Defendant.

Present: WILLIAMS, C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

We issued a writ of certiorari to address the limit, if any, on the power of the Attorney General of the State of Rhode Island to engage private counsel under a contingent fee agreement to prosecute public nuisances on behalf of the state. This is the first matter to reach this Court concerning the landmark litigation initiated by the State of Rhode Island (plaintiff) against various lead pigment manufacturers and their trade association, Lead Industries Association, Inc. (collectively defendants).[1] To help shoulder the enormous cost of this unprecedented lawsuit, the Attorney General engaged two private law firms to provide legal representation under a contingent fee agreement. It is the propriety of this agreement that is the subject of the present controversy. Be-cause we conclude the matter is not presently justiciable, we deny and quash the writ without prejudice.

## I

### Facts and Travel

Despite the enactment of the Lead Poisoning Prevention Act (LPPA), P.L. 1991, ch. 355, § 1, in 1991,[2] Rhode Island has been dubbed by some the "lead paint capital of the country."[3] This perceived public health crisis resulted in a decision by former Attorney General Sheldon Whitehouse (Whitehouse) to commence a lawsuit against defendants. Realizing the state did not have adequate resources to finance such a demanding suit, in October 1999 Whitehouse executed a retainer agreement (agreement) with John J. McConnell, Jr. of the law firm Ness, Motley, Loadholt, Richardson & Poole, now Motley Rice LLP, and Leonard Decof of the law firm Decof & Grimm, now Decof & Decof (collectively Contingent Fee Counsel). The agreement promised a contingency of 16 2/3 percent of any monies recovered to Contingent Fee Counsel; Contingent Fee Counsel, in turn, agreed to provide legal representation for the state.[4]

In August 2002, defendants filed a motion requesting that the Superior Court

1. The other named defendants in the original complaint were American Cyanamid Company, Atlantic Richfield Company, E.I. DuPont de Nemours and Company, The O'Brien Company, the Glidden Company, NL Industries, Inc., SCM Chemicals, The Sherwin–Williams Company, and John Doe Corporations, some of which are successors in interest to other entities.

2. General Laws 1956 chapter 24.6 of title 23.

3. Peter B. Lord, *Are lead-paint firms liable for damages?*, The Providence Journal, June 18, 1999 at A–1.

4. The retainer agreement between the Attorney General and Contingent Fee Counsel provided, in pertinent part, as follows:

"The State of Rhode Island ("State"), by and through Sheldon Whitehouse, its Attorney General ("Attorney General"), hereby retains the law firms of Ness, Motley, Loadholt, Richardson & Poole, * * * and Decof & Grimm, * * * ([Contingent Fee Counsel]), to pursue any and all claims against any and all persons, corporations and other entities for damages of every kind arising out of the manufacture, sale, distribution and use of lead paint, upon the following terms and conditions:

"1. [Contingent Fee Counsel] will diligently and forcefully prosecute all claims

declare the agreement violative of public policy, citing the California Supreme Court's decision in *People ex rel. Clancy v. Superior Court of Riverside County*, 39 Cal.3d 740, 218 Cal.Rptr. 24, 705 P.2d 347 (1985). According to defendants, they had not yet had an opportunity to review the actual agreement, and plaintiff did not produce the document at the motion hearing. The motion justice denied the defense motion, first noting that California caselaw is not binding in this jurisdiction, and further reasoning that the enormous cost of the litigation would "unnecessarily * * * tie the hands of the Attorney General in the proper performance of his duties."

Several months later and armed with a copy of the agreement, defendants re-

newed their motion to have the Superior Court declare the agreement unenforceable and void as (1) an unlawful delegation of the Attorney General's authority, and (2) improper under the reasoning of the decision in *Clancy*. The motion justice agreed with defendants that the agreement was an unlawful delegation of the Attorney General's authority:

"This Court has no trouble in concluding that as a constitutional officer of this State and in exercising powers which predate the Constitution * * * the Attorney General cannot totally cede to Contingent Fee Counsel the powers of his office as he does in the manner set forth in paragraph 1 of the [agreement]."

which, in their judgment, should be asserted against any and all persons, firms or corporations for damages arising out of or referable to the manufacture, sale, distribution or use of lead paint.

"2. The Attorney General shall have the right to designate from either of [Contingent Fee Counsel] chief counsel, with full authority and responsibility for all case management, trial strategy and other decisions necessary or incident to the necessary prosecution of the claims.

"3. [Contingent Fee Counsel] will render all services necessary in the proper prosecution of the claims, including consultation, advice, research, preparation, negotiation, litigation and all appeals, if necessary, on a contingent fee basis, to-wit: sixteen and two-thirds percent (16 2/3%) of any and all moneys received by the State in settlement, judgment or otherwise. As payments are received by the State on account of the claims, whether by settlement, judgment or otherwise, the State will promptly pay the [Contingent Fee Counsel].

"* * *

"5. In the event that the services of either [Contingent Fee Counsel] shall be terminated for any reason, such [Contingent Fee Counsel] shall be entitled to compensation on the basis of quantum meruit, but in no event less than its share of sixteen and two-thirds percent (16 2/3%) of any and all offers of settlement received by the State at

the time of such termination. Such payment of quantum meruit fees shall be paid by the State at the time of final disposition of all claims and recovery of moneys.

"6. In the event the litigation is resolved, by settlement or judgment, under terms involving the provision of goods or services, equitable relief, or any other 'in-kind' payment, the parties hereto agree to seek, as part of any such settlement, compensation for [Contingent Fee Counsel] equivalent to the contingency fee and expenses to which [Contingent Fee Counsel] would be entitled under this Agreement. In the event the Attorney General is unable to secure such compensation for [Contingent Fee Counsel] as part of any 'in-kind' settlement, the Attorney General agrees to petition the General Assembly to appropriate funds to compensate [Contingent Fee Counsel].

"7. The parties hereto agree to extend their best efforts, to the extent legally possible, against all defendants to recover counsel fees for [Contingent Fee Counsel] directly from the defendants, in addition to any settlement, whether monetary or otherwise. All such recovery of fees will be credited in full against all fees owed by the State to [Contingent Fee Counsel] under this Agreement, whether for monetary or non-monetary recovery.

"This Agreement shall be binding upon the parties hereto, and their respective successors and assigns."

The motion justice did not, however, immediately declare the agreement void. Instead, noting that he had "already * * * determined that nothing in the jurisprudence of this jurisdiction precludes that method of compensation in matters of this nature," he granted defendants' motion conditionally:

"Defendants' motion shall be granted unless, within two weeks of the date hereof, Plaintiff provides to this Court and to counsel for the Defendants a copy of an amendment to the [agreement] containing a provision or provisions which cure what this Court has found in this Decision to be a wrongful ceding of power/authority by the Attorney General to Contingent Fee Counsel. Such amendment may, in the discretion of the parties to the [agreement] be on a *nunc pro tunc* basis to the date of the execution of the [agreement] provided that the Attorney General execute a statement to the effect that by signing the original complaint herein the Attorney General made the ultimate determination as to who the Defendants should be and as to the causes of action to be asserted against them."

In compliance with the motion justice's order, the Attorney General, with Contingent Fee Counsel, executed an amendment to the agreement that deleted paragraph two, and further provided that

"[n]otwithstanding any other provisions contained in the [agreement], as chief legal officer of the State of Rhode Island the Attorney General shall at all times retain full control of the litigation, including but not limited to who to sue, what causes of action(s) should be asserted, and settlement or termination of this lawsuit. This provision does not prohibit outside counsel from exercising

their professional judgment in prosecuting this case in accord therewith."

This amended agreement was "entered on a *nunc pro tunc* basis to the date of the execution of the [agreement]." The defendants subsequently requested that the motion justice reconsider his decision to permit the Attorney General and Contingent Fee Counsel to amend the agreement *nunc pro tunc,* but the motion justice declined to change his decision.

Certain defendants (petitioners)[5] petitioned this Court for a writ of certiorari to review the narrow question of whether the contingency fee arrangement between the Attorney General and Contingent Fee Counsel was lawful. Amicus curiae briefs, for which we are grateful, have been submitted by the Washington Legal Foundation, the Product Liability Advisory Council, Inc., and jointly by the Chamber of Commerce of the United States and the American Tort Reform Association, all in support of petitioners.

On March 29, 2006, this Court issued an order directing the parties to be prepared to address at oral argument the immediate justiciability of the present matter.

## II

## Analysis

Before this Court may entertain the merits of petitioners' substantive arguments regarding the propriety of the contingent fee agreement in this case, we first must address the threshold question of justiciability. "Unlike the United States Constitution, there is no express language in the Rhode Island [C]onstitution which confines the exercise of [the Rhode Island Court's] judicial power to actual 'cases and controversies.'" *Vose v. Rhode Island*

5. The petitioners in this matter are Atlantic Richfield Company, E.I. DuPont de Nemours and Company, NL Industries, Inc., and The Sherwin–Williams Company.

*Brotherhood of Correctional Officers,* 587 A.2d 913, 915 n. 2 (R.I.1991) (quoting *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 28, 317 A.2d 124, 130 (1974)). Nevertheless, this Court previously has recognized this functional limitation to judicial review as a logical underpinning of judicial power:

> "Indeed, laws and courts have their origin in the necessity of rules and means to enforce them, to be applied to cases and controversies within their jurisdiction; and our whole idea of judicial power is, the power of the [courts] to apply the [laws] to the decision of those cases and controversies." *G & D Taylor & Co. v. Place,* 4 R.I. 324, 337 (1856); *see also Sullivan v. Chafee,* 703 A.2d 748, 752 (R.I.1997) (recognizing that "'our whole idea of judicial power' is entailed within the concept of courts applying laws to cases and controversies within their jurisdiction").

Consequently, we have concluded that this Court "will not issue advisory opinions or rule on abstract questions." *Vose,* 587 A.2d at 915 n. 2.[6]

■ Related to the requirements of justiciability—including standing, mootness, and ripeness, *see* 1 Laurence H. Tribe, *American Constitutional Law,* § 3–7 at 313 (3d ed. 2000)—is the "'deeply rooted' commitment 'not to pass on questions of constitutionality' unless adjudication of the constitutional issue is necessary." *Elk Grove Unified School District v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (quoting *Spector Motor Service, Inc. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)); *Rescue Army v. Municipal Court of Los Angeles,*

331 U.S. 549, 570 n. 34, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947) ("'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality * * * unless such adjudication is unavoidable.'"). This policy-based limitation has its genesis both in a "refusal to render advisory opinions and in applications of the related jurisdictional policy drawn from the case and controversy limitation." *Rescue Army,* 331 U.S. at 568, 67 S.Ct. 1409. "Indeed in origin and in practical effects, though not in technical function, it is a corollary offshoot of the case and controversy rule." *Id.* at 570, 67 S.Ct. 1409. As acknowledged by Professor Laurence H. Tribe, this policy is promoted by the more recognizable features of justiciability:

> "Even when a dispute is adequately mature in a constitutional sense, however, subsequent events may sharpen the controversy or remove the need for decision of at least some aspects of the matter. Thus, ripeness doctrine also furthers the prudential policy of 'judicial restraint from unnecessary decision of constitutional issues' by allowing a determination that a resolution of the dispute should come at a later date." 1 Tribe, § 3–10 at 335.

This policy "is one of substance, grounded in considerations which transcend all such particular limitations." *Rescue Army,* 331 U.S. at 570, 67 S.Ct. 1409. As the United States Supreme Court has noted:

> "The policy's ultimate foundations * * * lie in all that goes to make up the unique place and character, in our

---

**6.** Our insistence upon a present case or controversy as a prerequisite to adjudication in ordinary situations is distinguishable from this Court's obligation to issue advisory opinions upon request from the Governor or ei-

ther house of the General Assembly as prescribed by our Constitution. R.I. Const. art. 10, sec. 3; *see also Sullivan v. Chafee,* 703 A.2d 748, 752 n. 5 (R.I.1997).

scheme, of judicial review of governmental action for constitutionality. They are found in the delicacy of that function, particularly in view of possible consequences for others stemming also from constitutional roots; the comparative finality of those consequences; the consideration due to the judgment of other repositories of constitutional power concerning the scope of their authority; the necessity, if government is to function constitutionally, for each to keep within its power, including the courts; the inherent limitations of the judicial process, arising especially from its largely negative character and limited resources of enforcement; withal in the paramount importance of constitutional adjudication in our system." *Id.* at 571, 67 S.Ct. 1409.

In fact, a contrary policy favoring the hasty review of constitutional questions would be ill-advised, "[f]or premature and relatively abstract decision, which such a policy would be most likely to promote, have their part * * * in rendering rights uncertain and insecure." *Id.* at 572, 67 S.Ct. 1409.

 A constitutional rule of strict necessity long has been recognized in this jurisdiction. Most often it has manifested itself in our reluctance to adjudicate constitutional questions when a case is capable of decision upon other, non-constitutional grounds. *See, e.g., Caron v. Town of North Smithfield,* 885 A.2d 1163, 1165 (R.I.2005) (mem.) ("[T]his Court has on many occasions held that it will not decide a case on constitutional grounds if it otherwise can be decided."); *In re Court Order Dated October 22, 2003,* 886 A.2d 342, 350 n. 7 (R.I.2005) ("[W]e are quite reluctant to reach constitutional issues when there are adequate non-constitutional grounds upon which to base our rulings."); *State v. Berberian,* 80 R.I. 444, 445, 98 A.2d 270,

270–71 (1953) ("It is, however, well settled that this court will not decide a constitutional question raised on the record when it is clear that the case before it can be decided on another point and that the determination of such question is not indispensably necessary for the disposition of the case."). It is the related policy of strict necessity that requires this Court to refrain from deciding constitutional matters unless unavoidable.

 In light of the foregoing, we conclude that the constitutional questions offered by this writ of certiorari are not presently justiciable. First, petitioners argue that the contingent fee agreement in this case violated their due process rights under the Fourteenth Amendment to the United States Constitution. Second, petitioners' contention that the agreement violated the laws of this state necessarily implicates sensitive questions regarding the separation of powers in this state and the proper role of the constitutional office of the Attorney General in relation to the exclusively legislative powers of the General Assembly. Since both arguments involve novel questions of constitutional law in this jurisdiction, we have concluded that we should postpone our review because their immediate review is not unavoidable at this time. The petitioners represented to this Court at oral argument that several posttrial motions are still pending below. In addition, we are aware that a remedy has yet to be crafted in accordance with the jury verdict in favor of the state rendered this past February. We think that our review of these important constitutional issues will benefit significantly from the expanded record resulting from resolution of these matters in the Superior Court. Furthermore, Contingent Fee Counsel have confirmed their willingness to proceed below even with the knowledge that the constitutional propriety of their com-

pensation in this case is uncertain. Finally, we are confident that the issues presented will not evade review because any aggrieved party in this case will be entitled to an appeal to this Court.

### Conclusion

For the reasons stated herein, we deny the petitioners' petition for writ of certiorari and quash the writ for want of present justiciability. Our decision is, of course, without prejudice. The papers shall be returned to the Superior Court.

Justice GOLDBERG did not participate.