DECISION
Before the Court for decision is a motion brought by The Sherwin Williams Company, NL Industries, Inc., and Millennium Holdings, LLC (collectively, the Defendants) seeking an award of costs incurred during litigation pursuant to Super. R. Civ. P. 54(d) and G.L. 1956 §§ 9-22-5, 9-22-7, 9-22-9, 9-22-15,9-22-17, 9-22-19, 9-22-20. The Defendants assert that as the prevailing parties in the matter, they are entitled to recover their allowable costs from the State and remain ready to prepare and file bills of costs with the Court.See State v. Lead Indus. Ass'n, Inc.,951 A.2d 428 (R.I. 2008). The State objects to the *Page 2 
Defendant's request for costs arguing, inter alia, that an award of costs against the State is barred by the doctrine of sovereign immunity.[1]
 I Facts and Travel
The facts leading up to this controversy have been discussed inState v. Lead Indus. Ass'n, Inc.,951 A.2d 428 (R.I. 2008) and need not be recounted in detail here. Upon conclusion of what is considered to have been the longest civil trial in Rhode Island history, a jury found that the cumulative presence of lead in paints and coatings on buildings throughout the State of Rhode Island constituted a public nuisance for which the Defendants were liable.[2] See State v.Lead Indus. Ass'n Inc., 2007 R.I. Super. WL 711824 (Feb. 26, 2007). In accordance with the jury verdict, the Court entered judgment on March 16, 2007 against the Defendants for the abatement of that nuisance. On July 1, 2008, the Rhode Island Supreme Court rendered its decision on the Defendants' appeal reversing the jury verdict and vacating the judgment of abatement.Lead Indus. Ass'n Inc., 951 A.2d at 435. Now that the Supreme Court has vacated the judgment of abatement and directed judgment in favor of the Defendants, the Defendants seek an award of costs associated with the litigation.
 II Standard of Review
In a civil action, a prevailing party is entitled to recover costs "except where otherwise specially provided, or as justice may require, in the discretion of the court." Section 9-22-5;see also Super. R. Civ. P. 54(d) ("[c]osts . . . shall be allowed as of course to the prevailing party as provided by statute and by these rules unless the court otherwise specifically directs"). Such *Page 3 
costs generally are considered to be the expenses of suing another party, including, but clearly not limited to, filing fees and fees to serve process. Kottis v. Cerilli,612 A.2d 661, 669 (R.I. 1992). However, a determination of whether to grant or deny the award of costs is within the sound discretion of the trial justice under § 9-22-5 and Rule 54(d). Id.
"[D]iscretion is not exercised by merely granting or denying a party's request." DiRaimo v. City of Providence,714 A.2d 554, 557 (R.I. 1998) (quoting Hartman v. Carter,121 R.I. 1, 4-5, 393 A.2d 1102, 1105 (1978)). Rather, the term "discretion" denotes "action taken in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law." Id.
The Rhode Island Supreme Court has yet to articulate the standard of review that a court must apply when evaluating a prevailing party's motion for costs under Rule 54(d). However, given that our Rule 54(d) is substantially similar to Rule 54(d)(1)[3]
of the Federal Rules of Civil Procedure, the Court will look to the Federal Rules and interpretations thereof for guidance. See CroweCountryside Realty Associates, Co., LLC v. Novare Engineers,Inc., 891 A.2d 838, 840 (R.I. 2006) (looking to federal court decisions for guidance as to how to interpret a Rhode Island Rule of Civil Procedure where the federal counterpart was "substantially similar"); Smith v. Johns-Manville Corp.,489 A.2d 336, 339 (R.I. 1985) (When federal rule of procedure and state rule are substantially similar, Supreme Court will look to federal courts for guidance or interpretation of state rule.).
Although there is a presumption in favor of awarding costs to the prevailing party, under Rule 54(d), awarding of costs is discretionary, and the Court may deny costs "upon a showing that such an award would be inequitable." DLC ManagementCorp. v. Town of Hyde Park, 45 F. Supp. 2d 314, *Page 4 
315 (S.D.N.Y. 1999); see also Remington Prods.,Inc. v. North American Philips, Corp.,763 F. Supp. 683, 686 (D.Conn. 1991). Factors often weighed when determining whether to award costs include the financial need of the prevailing party for reimbursement, the burden that the imposition of costs would have on a non-affluent, non-prevailing party, any bad faith or misconduct by the prevailing party during the litigation, and the good faith of the plaintiff in filing the action. SeeMuller v. U.S., 811 F. Supp. 328, 329 (N.D. Ohio 1992) (citingCounty of Suffolk v. Secretary of the Interior,76 F.R.D. 469, 473 (E.D.N.Y. 1977); Black Hills Alliance v.Reg'l Forester, 526 F. Supp. 257, 258 (W.D.S.D. 1981));see also Surprise v. GTE Service Corp.,202 F.R.D. 79, 81 (D.Conn. 2000); DLC Management Corp.,45 F.Supp.2d at 316; Remington Prods.,763 F. Supp. at 687. Courts also have looked to the "equities and public interests at stake" considering whether the action provided any direct or indirect benefit to the public and whether imposition of costs would unduly inhibit future litigation. See County ofSuffolk, 76 F.R.D. at 473; Black Hills Alliance,526 F. Supp. at 260; Muller, 811 F. Supp. at 329. Therefore, when reviewing Defendants' motion and determining whether to award costs, the Court considers the foregoing factors and applies them to the relevant facts of the matter.
 III Discussion
The Defendants argue that as prevailing parties they are entitled to costs under Rule 54(d) and § 9-22-5. Although the Court has noted above that there is a presumption in favor of awarding costs to the prevailing party, such an award is ultimately within the discretion of the Court. See Super. R. Civ. P. 54(d); Section 9-22-5. Here, after a review of relevant factors, including the equities and public interests at stake, the Court finds that each party should bear its own costs.
Although the State did not ultimately prevail in this action, its claim was neither frivolous *Page 5 
nor made in bad faith. In Rhode Island, the Attorney General has a "common law duty to represent the public interest."Lead Indus. Ass'n Inc., 951 A.2d at 471 (quoting NewportRealty, Inc. v. Lynch, 878 A.2d 1021, 1032 (R.I. 2005)). The public interest in this "landmark lawsuit" was highlighted by our Supreme Court in its decision on the Defendants' appeal.Id. at 434. Childhood exposure to low levels of lead can lead to "permanent learning disabilities, reduced concentration and attentiveness, and behavior problems, problems which may persist and adversely affect the child's chances for success in school and life." Id. at 437 (quoting G.L. 1956 § 23-24.6-2(1)). Exposure to higher levels of lead can cause more serious consequences such as comas, convulsions, and even death. Id. (citing Office of Lead-Based Paint Abatement and Poisoning Prevention,61 Fed. Reg. at 29170).
Our Supreme Court noted that "lead-based paint is the primary source of childhood lead exposure." Id. at 437 (citing Office of Lead-Based Paint Abatement and Poisoning Prevention,61 Fed. Reg. at 29170.) Further, although lead poisoning is preventable, it is "the most severe environmental health problem in Rhode Island."Id. at 436 (citing G.L. 1956 § 23-24.6-2-6-3). In fact, Providence, at the inception of this litigation, was referred to as the "lead paint capital of the country" because of its disproportionately high number of children with elevated blood-levels. State v Lead Indus. Ass'n Inc.898 A.2d 1234, 1235 (R.I. 2006) (quoting Peter B. Lord, "Are lead-paint firms liable for damages?" The ProvidenceJournal, June 18, 1999 at A-1). As this perceived public health crisis resulted in the decision by the previous Attorney General to commence a lawsuit against the Defendants, the Court is satisfied that the claims against the Defendants were made in good faith.See Lead Indus. Ass'n Inc. 898 A.2d at 1235.
The Court is aware that the State's good faith alone is insufficient to deny an award of costs.[4] Surprise,202 F.R.D. at 82. The Court has also considered that the taxation of costs *Page 6 
under the present circumstances could have an "unwarranted punitive effect." Muller, 811 F. Supp at 329. In cases involving similar complex issues, [5] as well as public health concerns, courts have declined to award costs to the prevailing party when such action would act like a penalty to plaintiffs acting in good faith. In County of Suffolk, the Court declined to award costs to the prevailing defendants, finding that plaintiffs commenced "bona fide litigation to protect the environment" and an award of costs could deter future environmental suits. 76 F.R.D. at 474;Cf. Black Hills Alliance, 526 F. Supp at 259-260 (court found that action brought to halt search for uranium in a particular area had clearly been brought in good faith and denial of costs to non-prevailing plaintiffs would unduly inhibit future environmental litigation). Similarly, here the State, faced with a major public health concern, commenced litigation in good faith, and the awarding of costs could have a chilling effect on future suits by the public raising public health or environmental concerns.Id.; see also Muller, 811 F. Supp. at 329.
The Court has also considered the substantial benefits that have been conferred on both the public and the prevailing parties. This litigation has brought significant attention to the serious harms of lead poisoning in Rhode Island, leading to an increased awareness in both the public and State officials. In 2005 the Rhode Island Department of Health (RIDOH) reported a *Page 7 
76 percent decline in the number of lead-poisoned children, decreasing the percentage from 20.5 percent in 1995 to 5 percent in 2004. Lead Indus. Ass'n Inc., 951 A.2d at 437 (citing Rhode Island Department of Health, Childhood Lead Poisoning in RhodeIsland: The Numbers 2005 Edition 4, 19.[6] Further, to supplement the 1991 Lead Poisoning Prevention Act, § 23-24.6, in 2002 the General Assembly enacted the Lead Hazard Mitigation Act, G.L. 1956 42-128.1-1 et seq., which was designed to promote the prevention of childhood lead poisoning in Rhode Island and provide Rhode Island residents with access to housing that is adequately maintained and free of lead hazards.
The Court believes the prevailing Defendants also received a benefit from the litigation. With our Supreme Court's ruling on the Defendants' appeal, the litigation clarified the law of public nuisance and therefore the rights and obligations of the prevailing Defendants. See Lead Indus. Ass'n, Inc.,951 A.2d at 428. The litigation was of significant future benefit to the prevailing Defendants considering that Maine, Ohio, Vermont, and 13 other States and Commonwealths filed an amicus brief in support of the State during the Defendants' appeal. See Amicus Brief of Maine, Ohio, Vermont, and 13 Other States and Commonwealths in Support of Appellee State of Rhode Island, State of RhodeIsland v. Lead Indus. Ass'n, Inc., Case No. SU-07-121-A (Rhode Island Supreme Court, 2008). The ultimate Rhode Island Supreme Court ruling likely prevented several other states from filing similar suits against the Defendants.
 VI Conclusion
After considering the totality of the circumstances, including the equities and public *Page 8 
interest, the Court finds that each party shall bear its own costs.[7] The Court is satisfied that the State commenced and pursued this litigation in good faith and an imposition of costs would act as an unnecessary penalty. Further, the Court finds that substantial benefits have been conferred on both the public and the Defendants as a result of the litigation of this matter. Therefore, the Court denies Defendants' motion for an award of costs incurred during litigation.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] The Court has already determined that the State, the Plaintiff in this matter, cannot avail itself of the defense of sovereign immunity. State v. Lead Indus. Ass'n Inc., 2009 R.I. Super. WL 185354 (January 22, 2009).
[2] A fourth defendant, Atlantic Richfield Co., (ARCO) was found not to be liable at the trial. See State v. Lead Indus. Ass'nInc., 2007 R.I. Super. WL 711824 (Feb. 26, 2007).
[3] Rule 54(d)(1) of the Federal Rules of Civil Procedure provides in pertinent part: "Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party."
[4] Although not a basis for the present decision, the Court notes the severe financial position of the State. In 1999, when the State first commenced this litigation, "[it] did not have adequate resources to finance such a demanding suit." Lead Indus. Ass'nInc., 898 A.2d at 1235. Additionally, its current financial situation has actually worsened with the State facing a $590 million deficit for fiscal year 2010. (Steven Peoples, "Sharp fall in revenues leads to jump in budget deficit" The ProvidenceJournal, May 12, 2010.) The costs associated with this litigation, which lasted more than ten years, are expected to be substantial. In fact, at a hearing in 2008, counsel for Sherwin-Williams estimated to the Court that it would take "at a minimum about sixty days" to prepare and file its bills of costs. (Hearing Transcript August 15, 2008, 26:24-27:6.). In similar cases the financial position of the parties is often a consideration for the Court. See County of Suffolk, 76 F.R.D. at 473-74
(The Court declined to award costs to the prevailing defendants when it would create a substantial burden to local taxpayers.); see alsoAssociation of Mexican-American Educators v. California,231 F.3d 572, 592-93 (9th Cir. 2000) (court upheld the denial of costs to prevailing defendants which was based in part on the economic disparity between the plaintiffs, small nonprofit educational organizations, and the defendant, the State of California.); Muller, 811 F. Supp at 329 (The Court denied costs finding, inter alia, that given plaintiff's age, physical incapacity for work, and limited income, the imposition of costs would be unduly burdensome.).
[5] Our Supreme Court acknowledged that this had been a "formidable and problematic case" presenting complex issues.Lead Indus. Ass'n Inc., 958 A.2d at 455-56.
[6] Although Rhode Island experienced a significant decrease in childhood lead poisonings, the 5 percent prevalence rate in 2004 was more than double the national average. Id.
[7] This Court has already determined that under Super. R. Civ. P. 53 the State is responsible for the reimbursement of all costs and expenses associated with the Co-Examiners.State v. Lead Indus. Ass'n Inc., 2009 R.I. Super. WL 185354 (January 22, 2009).