DECISION
The matter before this Court is an appeal by Edward Pelletier[1], ("Sergeant Pelletier" or "Plaintiff"), of a decision rendered by a Hearing Committee ("Committee") formed pursuant to the Law Enforcement Officers' Bill of Rights Act ("LEOBOR" or "LEOBOR Act"). In his appeal, Plaintiff challenges the Committee's decision alleging it is:
 (1) In violation of constitutional or statutory authority of the agency;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and/or is
 (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[2]
Plaintiff requests this Court grant his appeal and set aside those portions of the decision which are in violation of G. L. § 42-35 and also G. L. § 42-28.6.[3] Jurisdiction is pursuant to G.L. §§ 42-28.6-12
and 42-35-15. *Page 2 
 FACTS AND TRAVEL Charges
On May 8, 2006, Plaintiff received a letter from Colonel Stephen M. McCartney, Chief of Police for the Warwick Police Department, informing Plaintiff of the Chief's intent to bring departmental charges against him. The communication indicated that there were three (3) charges and the specifications of each charge were detailed within the communication.
 Charge I
Charge I involved a charge of "Conduct Unbecoming an Officer"[4] as set forth in Part II of the Rules and Regulations of the Warwick Police Department, specifically Section B, subsection 2 thereof. The specifications relating to charge I were also outlined in the Chief's May 8, 2006 communication. The specifications alleged that on Friday, October 8, 2004 at the 0800 roll call, Sergeant Pelletier talked to those officers present at the roll call about his (Sergeant Pelletier's) ongoing disciplinary hearing. Sergeant Pelletier is alleged to have stated to those present at the roll call that other officers had lied during the disciplinary hearing and Sergeant Pelletier is further alleged to have stated that "someone had lied to advance themselves." The specifications to Charge I continue and further allege that on October 2, 2004, during the 0800 roll call, the officers present at that roll call allegedly told Captain Paul J. Shanley about other remarks that Sergeant Pelletier had made to them.[5] These "other remarks" also included statements Sergeant Pelletier allegedly made about the ongoing disciplinary hearing. The specifications *Page 3 
alleged that another officer had told Captain Shanley that Sergeant Pelletier specifically mentioned the names of Sergeant Mark Canning, and Detectives Mark Perkins and Raymond Mascarelli as "being involved in a conspiracy against Sergeant Pelletier." Officers allegedly told Captain Shanley that Sergeant Pelletier had offered to show them "transcripts" and also offered to allow them an opportunity to listen to tapes he had in his (Sergeant Pelletier's) possession. Sergeant Pelletier also allegedly told them he would be setting up a date at the FOP[6] where the tapes and transcripts could be presented. The specifications also included an allegation that another officer told Captain Shanley that he had been approached by Sergeant Pelletier in the rear parking lot of police headquarters and Sergeant Pelletier had showed him paperwork with Lieutenant Nelson's name on same and further that Sergeant Pelletier had remarked that Lieutenant Nelson had lied.
 Charge II
Charge II involved a charge of "Criticism and Malicious Gossip"[7]
as set forth in Part II of the Rules and Regulations of the Warwick Police Department, specifically Section B, subsection 6 thereof. The specifications related to Charge II indicate that at the October 2, 2004 and October 8, 2004 roll calls, officers stated to Captain Shanley[8]
that Sergeant Pelletier spoke about his (Sergeant Pelletier's) ongoing disciplinary hearing, that Sergeant Pelletier mentioned names of Warwick Police officers he believed *Page 4 
were involved in a conspiracy against him (Sergeant Pelletier), that Sergeant Pelletier accused fellow officers of lying during those disciplinary hearings, and that it would not be uncommon for Sergeant Pelletier to speak during roll calls about his personal problems with the Warwick Police Department.
 Charge III
Charge III involved a charge that Sergeant Pelletier violated the "Security of Firearms"[9] provision as set forth in Part II of the Rules and Regulations of the Warwick Police Department, specifically Section B, subsection 6 thereof. The specifications related to Charge III allege that on October 9, 2004, Sergeant Pelletier entered the office of Major Tavares, (at the Warwick Police headquarters), and in the presence of Major Tavares and Captain Shanley, Sergeant Pelletier made a statement claiming he couldn't work there (at the police department) anymore and indicated that he left his gun and gun belt down in the sergeant's office. The specifications continue, alleging that Sergeant Pelletier exited the office and left the building while Major Tavares found Sergeant Pelletier's loaded duty weapon and gun belt down in the unoccupied sergeant's office, out in the open and unsecured.
 Chief's Recommendation for Discipline
Colonel McCartney, in his May 8, 2006 letter to Sergeant Pelletier, recommended that Plaintiff be demoted from the rank of Sergeant to the rank of uniformed patrol officer effective immediately. *Page 5 
 Hearings and Evidence
A duly formed Hearing Committee met, heard testimony, and received evidence at the Cranston Municipal Court on August 25, August 30, September 12, and October 5, 2006. The Committee heard from sixteen (16) witnesses. The Committee received ten (10) exhibits from the City of Warwick and also received thirteen (13) exhibits from Plaintiff, Sergeant Pelletier.[10] Final arguments were heard by the Committee on October 30, 2006 at the offices of Allied Court Reporters. Extensions to complete the hearing and render a written decision were duly granted to the Committee. The Committee's Decision is dated December 11, 2006 and it was filed in the Superior Court on May 29, 2007.
 The Committee's Decision
The Committee unanimously concluded that the City of Warwick ("Warwick" or "Defendant") "overwhelmingly established a finding offact based upon a fair preponderance of the evidence, that Sergeant Edward F. Pelletier, III, violated Charge I, II, and III enumerated in the charging letter dated May 8, 2006."[11] (See Decision at page 25, italics in original). The Committee meted out an atypical penalty in the matter. The Committee's Decision required Plaintiff to submit to a "Fitness for Duty Examination" administered by Dr. Patricia Gallagher. By the terms of the Committee's Decision, Commander Titus would be the only member of the Warwick Police Department who testified at the hearing, to be allowed insight/input (sic) into Plaintiff's "Fitness for Duty *Page 6 
Examination." To continue with the Committee's Decision in succinct fashion, the Committee contemplated that Plaintiff would receive either a "Fit for Duty" finding from Dr. Gallagher, or a finding of "Unfit for Duty." In the event Plaintiff was found to be "Fit for Duty", he would immediately return to work at the rank of Sergeant. He would be issued a reprimand and required (by the terms of the Decision) to submit to firearms re-training. In the event Plaintiff was to be found "Unfit for Duty", Plaintiff would then remain suspended with pay pending an application of pension and/or retirement benefits pursuant to the police collective bargaining agreement. The Committee's Decision contemplates that such pension and/or retirement benefits may, or may not exist. The Committee's Decision provides that in the event that Plaintiff is not eligible for pension and/or retirement benefits, he would be terminated without pay and benefits.
 STANDARD OF REVIEW
"The Law Enforcement Officers' Bill of Rights, enacted in 1976, is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal." City of EastProvidence v. McLaughlin, 593 A.2d 1345, 1348 (R.I. 1991) (citingLynch v. King, 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978)). Under this Act, any law-enforcement officer facing charges that may result in punitive action may request a hearing before a committee comprised of three active or retired law enforcement officers. G.L. §§ 42-28.6-1 and 42-28.6-4. This committee has broad discretion to sustain, modify, or reverse the charges. See 42-28.6-11. The committee also has great discretion to modify, in whole or in part, the recommended sanctions presented by the charging authority. See Culhanev. Denisewich, 689 A.2d 1062, 1064-65 *Page 7 
(R.I. 1997) (citing State Dep't of Environmental Mgmt. v. Dutra,121 R.I. 614, 401 A.2d 1288 (1978) (citations omitted)).
An officer may appeal to the Superior Court from a decision made by the committee. See § 42-28.6-12. For the purpose of such an appeal, the committee is "deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of §§ 42-35-15 and 42-35-15.1." See § 42-28.6-12(a). Accordingly, this Court must apply the standard of review as set forth in § 42-35-15 (g):
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision pursuant to § 42-35-15, the Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Ctr. For Behavioral Health, R.I., Inc., v.Barros, 710 A.2d 680, 684 (R.I. 1998). As such, the Court's review is confined to "an examination of the certified record to determine if there is any legally competent *Page 8 
evidence therein to support the agency's decision." Johnston AmbulatorySurgical Assocs., Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quotingBarrington Sch. Comm. v. R.I. State Labor Relations Bd., 608 A.2d 1126,1138 (R.I. 1992)); see also Newport Shipyard v. R.I. Comm'n for HumanRights, 484 A.2d 893, 896-97 (R.I. 1984). Competent or substantial evidence is that which a reasonable mind might accept to support a conclusion. Newport Shipyard, 484 A.2d at 897 (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The Court "may reverse [the] findings of the administrative agency only in instances where the conclusions and the findings of fact are totally devoid of competent evidentiary support in the record, or from the reasonable inferences that might be drawn from such evidence."Bunch v. Bd. of Review, 690 A.2d 335, 337 (R.I. 1997) (citations omitted). In this respect, the Court's review is both limited and highly deferential. Culhane, 689 A.2d at 1064. However, the Court reviews questions of law de novo. Narragansett Wire Co., v. Norberg,118 R.I. 596, 376 A.2d 1 (1977).
 ISSUES PRESENTED ON APPEAL
Plaintiff submits a host of issues on appeal. Specifically, Plaintiff asserts that the Committee's Decision related to the medical review by Dr. Gallagher is outside the jurisdiction of the Hearing Committee. He also asserts that the medical review violates the terms and provisions of the Collective Bargaining Agreement, the Police Department's Rules and Regulations regarding disability pensions, the Plaintiff's due process rights, and further, that the Committee's Decision related to the medical review usurps the Superior Court's ability to review the determination made by Dr. Gallagher. Plaintiff asserts other issues on appeal including the allegations that the City of *Page 9 
Warwick's withholding of Dr. Gallagher's determination violates his due process rights and renders his rights of appeal under the terms of the Hearing Committee's Decision impossible to preserve and/or effectuate. Plaintiff also alleges that there have been irregularities related to the medical review in that other Police Department members provided input and/or insight into Dr. Gallagher's evaluation of the Plaintiff in violation of the terms of the Hearing Committee's Decision. Plaintiff lastly asserts that there are insufficient findings of fact — especially as related to specific findings, that the Hearing Committee's Decision violates his first amendment rights, that the Decision is arbitrary and capricious, amounts to retaliation against Plaintiff, and violates the Rhode Island Whistleblower statute, General Laws, Chapter 28-50.
 ANALYSIS Factual Findings
An officer facing departmental charges may request a hearing before a Hearing Committee which then is empowered to sustain, modify, or reverse the complaint or charges of the investigating authority. § 42-28.6-11. The Court's role, in its review of the Committee's findings, does not involve weighing the evidence or making factual findings. Rather, the Court must examine the extensive record to determine whether some competent evidence exists to support the committee's decision. City ofEast Providence v. McLaughlin, 593 A.2d 1345, 1348 (1991). The Court "may reverse [the] findings of the administrative agency only in instances where the conclusions and the findings of fact are totally devoid of competent evidentiary support in the record, or from the reasonable inferences that might be drawn from such evidence."Bunch v. Bd. of Review, 690 A.2d 335, 337 (R.I. 1997) (citations omitted). In this respect, the Court's *Page 10 
review is both limited and highly deferential. Culhane, 689A.2d at 1064. The Committee has authored a comprehensive Decision consisting of some twenty-six (26) pages. The Committee has incorporated large blocks of testimony into the text of its Decision. Of the sixteen (16) witnesses who testified in the proceeding, the Committee has incorporated portions of the testimony of twelve (12) members of the Warwick Police Department in its final Decision.
Major Tavares testified that he found Plaintiff's service weapon and gun belt and that the weapon was unsecured when it was located. Major Tavares testified that the service weapon was lying on top of the desk in the Sergeant's office. He noted that the weapon was "basically out there for any civilian or anybody else that may have been in that building, maintenance men or anybody else . . ." It is apparent to the Court that competent evidence exists on the record to support the Committee's conclusions that Plaintiff was guilty of Charge III notwithstanding Plaintiff's testimony that he was being chased by Captain Nelson. This Court may not substitute its judgment for that of the Committee as to the weight of evidence on questions of fact. (§42-35-15 (g)).
With regard to Charge I, The City alleged that Plaintiff was guilty of Conduct Unbecoming a Police Officer. The specified section reads, "An officer will not conduct himself or herself in a way, (sic) which reflects discredit upon his or her fellow officers or upon the police department." (Footnote 4, supra). The Committee took notice of the testimony of twelve (12) witnesses. At least seven (7) of the witnesses gave various eyewitness accounts of what Sergeant Pelletier had stated at the roll call on October 8, 2004. Two other witnesses, specifically Major Tavares and Captain Shanley gave testimony clearly indicating the Sergeant Pelletier was wrong in making personal *Page 11 
comments and accusations at roll call. Major Tavares said Plaintiff was "totally out of line." Captain Shanley unequivocally stated, "it is not proper." Major Tavares further testified that another officer, David Verity, had been approached by those who had heard Plaintiff's comments and Officer Verity had been upset by the situation. A portion of Officer Verity's testimony was incorporated into the Committee's Decision shedding some light on what it was that upset Officer Verity. His testimony indicates that he (Officer Verity) was approached by fellow officers and asked if it had been him who had testified the previous day at the Pelletier hearing. Officer Verity indicated that when he told his fellow officers that it was he who testified, their response was, "well he's in there calling you a liar."
The Committee's Decision recognizes that Captain Nelson and Sergeant Pelletier have an apparent employee conflict that may hamper the effectiveness and efficiency of the Warwick Police Department and may require the administrative review of Colonel Stephen McCartney, Chief of Police. Nonetheless, the Committee clearly found that Sergeant Pelletier's "constant pursuit of reviewing prior disciplinary matters with other members of the Department on issues that have already been adjudicated are (sic) cause for concern. (emphasis in original). The Committee's Decision continued that "[t]he pursuit that Sergeant Pelletier has undertaken is clearly having an impact on himself and the organization, which clearly fails to support the mission of the Warwick Police Department." (emphasis in original). The Committee's Decision continued noting that "[t]he testimony from the Warwick Police Department officers clearly established a finding of fact that Sergeant Pelletier made unauthorized and inappropriate comments during the October 8, 2004 roll call briefing and failed to properly secure his department *Page 12 
issued sidearm, which was left abandoned on a desk top, in violation of the Warwick Police Department's rules and regulations, a clear breach of the cardinal rules of firearm safety." (emphasis in original). The Committee's Decision continued with further findings of fact, "[t]he roll call setting is a symbolic arena for all law enforcement agencies to acquire the knowledge and information to perform the agencies (sic) mission. This forum should never be the platform for personal issues and grievances about the agency or its personnel. The Warwick Police Department has the authority to expect that supervisors will deliver the agencies (sic) directives in a proper business like (sic) fashion. The Sergeant must maintain command presence at roll call, which is a hallmark in establishing good order and discipline in all law enforcement agencies. The Hearing Committee is in a majority agreement that Sgt. Edward Pelletier violated that protocol and doing so (sic) committed the all (sic) the infractions memorialized in the charging letter dated May 8, 2006 — City Exhibit B." See Committee's Decision at pages 23 and 24.
This Court is cognizant that Sergeant Pelletier testified as to his own version of the events at roll call on November 8, 2004. He testified that at least some of the other officers there made inquiries to him about the events going on at the disciplinary hearing. Sergeant Pelletier's account depicts that he gave only short answers to deflect the questions and then cut off further discussion. It may be that if the Committee believed Sergeant Pelletier's testimony in its entirety, that the context of his remarks may be mitigated somewhat or even completely. However, the ability to make that particular finding belongs exclusively to the Committee. As set forth above, this Court may not *Page 13 
substitute its judgment for that of the Committee as to the weight of evidence on questions of fact. (§ 42-35-15 (g)).
Plaintiff contests the Committee's findings with regard to the element of malice in the allegations of Criticism and Malicious Gossip.See Charge II and specifications related thereto discussed above. The specified section reads, "An officer or non-sworn employee will not criticize any other officer or employee, except in the line of duty as a superior to the subordinate, nor will any officer or employee maliciously gossip about any superior, order, policy, procedure, case, or event that should remain police information, nor will an officer or employee cause to discredit, lower, or injure the morale of the personnel of the department or that of any individual of the department." The Committee's Decision makes it clear that the Defense (Sergeant Pelletier) provided the Committee with a definition of "malicious" out of a Legal Dictionary. The Decision notes that "malicious" is defined as "Characterized by, or involving, malice;having, or done with, wicked or mischievous intentions or motives;wrongful and done intentionally without just cause orexcuse."(emphasis in original). See Committee's Decision page 4. Considering the express mention of the definition in the Decision, as well as the emphasis contained in the definition, it is difficult to argue that the Committee was not cognizant of the meaning of the term "malicious." It is also well recognized that the Committee possesses a degree of expertise. Our Supreme Court, in the case of In reRaymond Denisewich, 643 A.2d 1194 (1994) has commented in that particular context:
 "The clear purpose behind the requirement that the committee members be `active law enforcement officers' is to afford protection to those charged with departmental violations by ensuring that the hearing committee is composed of individuals who are familiar with departmental practices and procedure during the appropriate timeframe. [Internal citation omitted]. Officers carrying out the daily routine of police work *Page 14 
contemporaneously with the alleged in fraction will be in the best position to judge another officer's actions . . ." Id. at 1198.
It is well established that a higher level of deference is owed when a court reviews agency determinations of matters within the agency's specialized expertise. See R.I. Higher Education Assistance Authority v.Secretary, U.S. Dept. of Education, 929 F.2d 844, 857
(1st Cir. 1991) citing Lile v. University of IowaHospitals and Clinics, 886 F.2d 157, 160, (8th Cir. 1989). See also Health Management Co. v R.I. Dept. of EnvironmentalManagement, P.C. No. 05-3232, 2006 R.I. Super. Lexis 54, May 15, 2006. (In the context of a review of a decision of the R.I. Department of Environmental Management, the Superior Court, concluding that future rights of development were distinguishable from present possessory rights, noted "[a] higher level of deference is owed when reviewing agency determinations within the agency's specialized expertise."). For purposes of an appeal under the LEOBOR Act, the Committee "shall be deemed an administrative agency" within the meaning of § 42-35-15. See § 42-28.6-12.
There are at least three (3) prohibited forms of conduct under the regulation addressing Criticism and Malicious Gossip. The regulation prohibits actual criticism of another officer (except for certain line of duty situations), malicious gossip (directed at various objects set forth in the regulation), or "causing to discredit, lower, or injure the morale (of the personnel or an individual of the department). A fair reading of the testimony depicted in the Committee's Decision justifies, at a minimum, the inferences that Sergeant Pelletier engaged in actual criticism of other officers, (not covered by the exceptions contained in the regulation), or Sergeant Pelletier engaged in a course of conduct "causing discredit" or injuring the morale of individuals within the police department. *Page 15 
Sergeant Pelletier, through counsel, suggests that the findings contained in the Committee's Decision are not sustainable, especially in light of the arbitration decision rendered in AAA Case # 11 390 014393 03. The case involves a hearing regarding a two-day suspension imposed on Sergeant Pelletier. The award in the arbitration case was dated August 12, 2005 and issued by Marcia L. Greenbaum. The official record indicates that the Committee received three exhibits relative to the arbitration, including a 1 page exhibit purporting to be the award rendered by Ms. Greenbaum, an index page from the transcript of the proceeding indicating who testified at the proceeding, and the actual arbitration decision of some eighty-five (85) pages. (Def: 1, 2, and 3 respectively). Plaintiff's argument on appeal, in this regard, is unpersuasive. While Plaintiff is certainly free to argue his position before the Committee, the Committee has broad discretion to sustain, modify, or reverse the charges. See § 42-28.6-11. This Court's review is both limited and highly deferential. Culhane v. Denisewich, supra. After a review of the Committee's Decision, the transcripts, and the entire record of the case, this Court cannot say that the Committee's conclusions and findings of fact are totally devoid of competent evidentiary support in the record and they must be upheld.
 The Penalty
The Committee is not bound by any pre-hearing recommendation of punitive measures made by the charging authority, but may take any action as is appropriate under the circumstances. Lynch v. King,120 R.I. 868, 391 A.2d 117 (1978). The Committee also has great discretion to modify in whole or in part the recommended sanctions presented by the charging authority. See Culhane v. Denisewich, 689 A.2d 1062, 1064-65
(R.I. 1997) (citing State Dep't of Environmental Mgmt. v. Dutra,121 R.I. 614, *Page 16 401 A.2d 1288 (1978) (citations omitted)). In the instant case, the Committee has set a penalty that Sergeant Pelletier submit to a "Fitness for Duty Examination" administered by Dr. Patricia Gallagher. Dr. Gallagher is the Director of Testing Services at the University of Rhode Island. The Committee's Decision next sets out the contingencies that may unfold following said examination.
The Committee's Decision indicates that if Sergeant Pelletier is found to be "Fit for Duty", he will be returned for duty at the rank of Sergeant, issued a written reprimand, and he must also submit to firearms re-training. However, if Sergeant Pelletier is found to be "Unfit for Duty", he shall remain suspended with pay pending an application for pension and/or retirement benefits afforded to him under the current collective bargaining agreement. If no such benefits are applicable, he will be immediately terminated from service without pay and benefits. The Committee's Decision further provides that if Sergeant Pelletier fails to file his application for pension or retirement benefits within 30 days of receiving Dr. Gallagher's finding of "Unfit for Duty" he shall be terminated. See Committee's Decision at page 25-26. At this writing, the understanding of this Court is that Sergeant Pelletier has submitted to Dr. Gallagher's "Fitness for Duty Examination", but the results of that examination have not been made known to Sergeant Pelletier by the City of Warwick. Furthermore, there have been allegations of irregularity related to Dr. Gallagher's examination of Sergeant Pelletier. Specifically, there is an allegation that members of the Warwick Police Department other than Commander Titus had some input into Dr. Gallagher's examination in contravention of the specific terms of the Committee's Decision. See Committee's Decision at page 25. *Page 17 
 Issues Related to the Penalty
Sergeant Pelletier, through counsel, has raised a host of issues related to the Committee's Decision on the applicable penalty. Some issues are of a constitutional dimension alleging that the Committee's Decision violates Sergeant Pelletier's first amendment rights and due process rights. Other arguments raised on behalf of Sergeant Pelletier allege that the Committee's Decision, especially as it relates to the "Fitness for Duty Examination" and its contingencies, exceeds the jurisdiction and authority of the Committee.
 Ripeness and Related Issues
Our Supreme Court has recently articulated its "deeply rooted commitment not to pass on questions of constitutionality unless adjudication of the constitutional issue is necessary." State of RhodeIsland v. Lead Industries Association, 898 A.2d 1234, 1238 (R.I. 2006). (internal citations and quotes omitted). The Supreme Court has also indicated that "the requirement of ripeness is based on the principle that [the] Court will not render advisory opinions or function in the abstract." Palazzolo v. State, 746 A.2d 707, 713 (R.I. 2000). Generally speaking, the concept of ripeness refers to the readiness of a particular case for litigation or court intervention. The United States Supreme Court has stated that "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all Texas v. United States,523 U.S. 296, 300 (1998) quoting Thomas v. Union Carbide AgriculturalProducts, Co., 473 U.S. 568, 581 (1985), (quoting 13A C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)). At other times the United States Supreme Court has noted that "ripeness is peculiarly a question of timing." *Page 18 
See Regional Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974); and "[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements over administrative policies." Abbott Laboratories v. Gardner, 387 U.S. 136,148 (1967).
The Rhode Island Supreme Court has noted that one of the basic prerequisites for ripeness under the Rhode Island Administrative Procedures Act, (APA), General Laws § 42-35-15, is that all administrative remedies within the agency must normally have been exhausted. See Barrington School Committee v. Rhode Island State LaborRelations Board, 608 A.2d 1126, 1131 (1992) and § 42 35-15 (a). The Court continued its analysis stating, "[t]he other component of the APA's ripeness test is that any adverse effects flowing from the agency's determination must have been felt concretely by the party seeking judicial review." Id., 608 A.2d at 1132. Earlier in that opinion, the Court had noted, "[t]he need for exhaustion to attain ripeness allows an agency to correct its own errors, perhaps thereby avoiding the necessity of any judicial involvement. See Schwartz,Administrative Law, § 8.33 (3d ed. 1991)." Id., 608 A.2d at 1131.
It is clear at this time that any adverse effects of the Committee's Decision have not been felt concretely by Sergeant Pelletier. There has not been an exhaustion of administrative remedies precisely because the results of Dr. Gallagher's "Fitness for Duty Examination" have not been made known or otherwise disclosed to Sergeant Pelletier. This Court must speculate whether Sergeant Pelletier will be found "Fit for Duty" and returned to work with a written reprimand and ordered into a firearms re-training program, or whether he will be found "Unfit for Duty" and expected to apply for pension *Page 19 
and retirement benefits. The Committee's Decision makes it clear that if Sergeant Pelletier does not qualify for pension and retirement benefits, he will be terminated.
Without knowing Sergeant Pelletier's ultimate fate, this Court would be forced to decide some of the issues he has presented to this Court in the abstract. The Court would need to make a determination of whether the penalty was "appropriate" within the meaning of Lynch v. King, supra, or within the Committee's "great discretion to modify in whole or in part the recommended sanctions presented by the charging authority" under Culhane v. Denisewich, supra. The Court may be required to take further evidence and argument in order to resolve the questions of law. See § 42-35-15 (f) and (g) (1), (2), (3), and (4). This is precisely what the ripeness doctrine seeks to avoid. Furthermore, this Court would be bound to contemplate the ultimate termination of Sergeant Pelletier and make a determination as to whether his constitutional rights have been violated. Our Supreme Court has indicated such questions should not be adjudicated unless they are "unavoidable." State of Rhode Island v.Lead Industries, supra.
Other decisions under the LEOBOR Act have been remanded when they are not susceptible of certainty. See State Department of EnvironmentalManagement v. Dutra, 121 R.I. 614, 401 A.2d 1288 (1979). In that case, defendant Dutra sought a hearing under the LEOBOR Act when the director had recommended his termination for certain infractions governing park police. A hearing committee convened and conducted a hearing. In a written decision, the hearing committee agreed that the charges against Dutra were supported by the evidence, but disagreed with the director on the appropriate punishment and concluded that Dutra should be suspended rather than dismissed. After the Superior Court upheld the committee's decision, the Rhode Island Supreme Court *Page 20 
affirmed the result but ordered the matter remanded back to the hearing committee in order to set the temporal limits of the suspension. Section42-35-15 (g) explicitly provides that the Court may "remand the case for further proceedings."
 REMAND WITH DIRECTIONS
In the instant matter, this Court finds that the Committee's factual findings of guilty in regard to the three (3) charges against Sergeant Pelletier are supported by substantial evidence in the record before the Court. With regard to the Committee's Decision as it relates to the penalty, this Court is unable to determine Sergeant Pelletier's precise fate based upon the present record. In order to properly adjudicate the matter with regard to the penalty, this Court would be forced to speculate as to Sergeant Pelletier's ultimate fate. The Court finds that the matter is not ripe for review on the remaining issues at this time. Granting great deference to the judgment of the Committee, the matter is remanded back to the Committee for further consideration and specific written findings with regard to the following instructions of this Court:
 1. Dr. Gallagher's report regarding Sergeant Pelletier's "Fitness for Duty" shall be delivered to counsel for Sergeant Pelletier by the City of Warwick, the Warwick Police Department, or the Committee (depending on who has possession of such report) within ten (10) days this Court's Decision. The Committee shall also read and review such report.
 2. The Committee shall schedule further hearings on this matter no earlier than thirty (30) days after counsel for Sergeant Pelletier receives a copy of Dr. Gallagher's report regarding Sergeant Pelletier's "Fitness for Duty." This provision is meant to provide both Sergeant Pelletier and his counsel sufficient time to review the report and prepare for further proceedings.
 3. Counsel for Sergeant Pelletier may inquire into any irregularities alleged to have occurred as related to Dr. Gallagher's "Fitness for Duty Examination" of Sergeant Pelletier in light of the conditions on such report set forth in the Committee's Decision. The Committee shall allow such inquiry and take testimony of witnesses if required. *Page 21 
 4. Counsel for Sergeant Pelletier may submit a legal memorandum with supporting documentation that he feels may demonstrate that the Committee's present Decision is beyond the constitutional or statutory authority of the Committee. The Committee is not bound to take testimony on this issue but shall permit counsel to argue before a final decision is rendered.
 5. Counsel for Sergeant Pelletier shall notify the Committee and opposing counsel no later than by the end of the first scheduled hearing of his intention to inquire into any alleged irregularities related to Dr. Gallagher's "Fitness for Duty Examination" or his intention to offer legal memoranda and supporting documentation related to the constitutional and statutory limits of the Committee's authority as it relates to an appropriate penalty.
 6. The Committee shall schedule further hearing(s) as it determines necessary and shall:
 • hear argument and take evidence (if necessary) related to any irregularities related to Dr. Gallagher's "Fitness for Duty Examination";
 • hear argument and receive submissions (if any) related to the constitutional and statutory limits of the Committee's authority;
 • make a final and definite written determination of Sergeant Pelletier's ultimate penalty;
 • seal Dr. Gallagher's report upon completion.
 7. In making a final and definite determination of Sergeant Pelletier's ultimate penalty, the Committee is not limited to the penalty set forth in the Committee's original Decision.
 8. The Committee is free to reaffirm the contingencies of Dr. Gallagher's "Fitness for Duty Examination" as set forth in its original Decision and then proceed to determine, with specificity, the ultimate fate of Sergeant Pelletier. (This Court makes no judgment as to the ultimate legality of that position at this time).
 9. The Committee is also free to proceed in a new direction and to fashion an "appropriate" sanction, or to exercise its "great discretion" in light of and pursuant to the cases of Lynch v. King and Culhane v. Denisewich, discussed earlier in the Court's Decision and also pursuant to the policy contained in the case of Barrington School Committee v. Rhode Island State Labor Relations Board, discussed earlier in the Court's Decision as well.
 10. Nothing contained in this Court's decision is meant to suggest that the Committee choose any one particular course of action over another.
 Counsel for Plaintiff shall submit an appropriate order forthwith.
[1] Plaintiff's full name is Edward F. Pelletier, III. He is a Sergeant with the Warwick Police Department. In the voluminous record of the case, including the Committee's Decision, an Arbitration Decision, letters, papers, and transcripts, he is properly referred to as "Sergeant Pelletier."
[2] See Plaintiff's Complaint at page 2 thereof.
[3] Plaintiff's Complaint at page 2 thereof.
[4] The specified section reads, "An officer will not conduct himself or herself in a way, (sic) which reflects discredit upon his or her fellow officers or upon the police department."
[5] The Specifications, at this point, do not indicate exactly when and where Sergeant Pelletier made the other remarks described.
[6] "FOP" stands for Fraternal Order of Police, the fraternal organization representing various police officers within a specific department.
[7] The specified section reads, "An officer or non-sworn employee will not criticize any other officer or employee, except in the line of duty as a superior to the subordinate, nor will any officer or employee maliciously gossip about any superior, order, policy, procedure, case, or event that should remain police information, nor will an officer or employee cause to discredit, lower, or injure the morale of the personnel of the department or that of any individual of the department."
[8] Regarding Specification II, it is not clear from the May 8, 2006 letter containing the charges and specifications whether Sergeant Pelletier is alleged to have made the comments himself at the October 2, 2004 and October 8, 2004 roll calls or whether it was the officers hearing the remarks informing Captain Shanley during the October 2, 2004 and October 8, 2004 roll calls with Captain Shanley.
[9] The specified section reads, "An officer is responsible for the safekeeping and security of his or her firearm at all times. An officer will not leave his or her firearm unattended and unsecured. When a firearm is left in a police locker, the officer will ensure that the locker is properly secured."
[10] The Committee's Decision, along with as the exhibits themselves, indicate they are marked as "Defense Exhibits."
[11] General Laws Section 42-28.6-11 provides that the Committee "shall be empowered to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority . . ."; Paragraph (c) of that Section further provides "it shall be the burden of the charging law enforcement agency to prove, by a fair preponderance of the evidence, that the law enforcement officer is guilty of the offense(s) or violation(s) of which he or she is accused." This Court shall treat the Committee's Decision as guilty findings pursuant to the statute. *Page 1